**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-4361

_____

DEUTSCHER TENNIS BUND, German Tennis Federation;
ROTHENBAUM SPORTS GMBH; QATAR TENNIS FEDERATION

v.

ATP TOUR INC.; ETIENNE DE VILLIERS; CHARLES PASARELL;
GRAHAM PEARCE; JACCO ELTINGH; PERRY ROGERS; IGGY JOVANOVIC;
JOHN DOE 7; JOHN DOE 8; JOHN DOE 9

ATP Tour Inc.,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-07-cv-00178)
District Judge:  Honorable Gregory M. Sleet

Argued November 17, 2011

Before:  RENDELL, AMBRO, and NYGAARD, <u>Circuit Judges</u>

(Opinion Filed:  May 11, 2012)

Tiffany Geyer-Lydon, Esquire
Carolyn S. Hake, Esquire
Philip Trainer, Jr., Esquire
Ashby & Geddes
500 Delaware Avenue
P. O. Box 1150, 8th Floor
Wilmington, DE  19899

Jordan B. Leader, Esquire
Bradley I. Ruskin, Esquire (Argued)
Jennifer R. Scullion, Esquire
Proskauer Rose
Eleven Times Square
New York, NY  10036-8299

      Counsel for Appellant

Hamish S. Cohen, Esquire
Stanley C. Fickle, Esquire
Robert D. MacGill, Esquire (Argued)
Peter J. Rusthoven, Esquire
Jennifer W. Adams, Esquire
Barnes & Thornburg
11 South Meridian Street, Suite 1313
Indianapolis, IN  46204

Comrie B. Flinn, Esquire
James L. Higgins, Esquire
Pilar G. Kraman, Esquire
Young, Conaway, Stargatt & Taylor
1000 West Street, P. O. Box 391
17th Floor, Brandywine Building
Wilmington, DE  19801

Timothy H. McCarten, Esquire
Stephen M. Nickelsburg, Esquire
Erin L. Palmer, Esquire
Clifford Chance US
2001 K Street N.W.
Washington, DC  20006

      Counsel for Appellees

————————————

OPINION

————————————

PER CURIAM

ATP Tour, Inc., appeals the order of the United States District Court for the District of Delaware denying ATP's post-trial motion for attorneys' fees, costs, and

expenses after successfully defending against a suit brought by ATP member federations Deutscher Tennis Bund and Qatar Tennis Federation, and Rothenbaum Sports GMBH. For the reasons stated below, we vacate the order of the District Court and remand the case for further proceedings consistent with this opinion.

I.

ATP is a not-for-profit Delaware membership corporation that governs an international men's professional tennis tour. Members consist of tennis tournament federations and individual professional players. Two federation members, Deutscher and Qatar, who jointly own the German Open in Hamburg, Germany, sued ATP and certain individual Board members over its decision to restructure the ATP Tour, resulting in a change in the schedule and rules for tournaments on the tour.[1]

Because of ATP's restructuring, a plan known as the "Brave New World" (the "Plan"), the German Open lost its top-tier status, reducing the number of points participating players earned toward their world ranking. The Plan also moved the tournament from its slot just before the French Open, which had made it easier to attract to the German Open highly ranked players, media coverage, and lucrative sponsorships.

Deutscher and Qatar alleged that the Plan created a favored class of tournaments and systematically disadvantaged the rest of ATP's tournaments from competing by controlling, *inter alia*, access to top players, prize money, broadcast rights, and the schedule. In so doing, Deutscher and Qatar asserted that ATP and its individual Board

---

[1] Appellant Rothenbaum Sports GMBH, owned by Deutscher Tennis Bund and non-party Qatarian Tennis Federation Germany GMBH, operates the German Open.

members violated sections 1 and 2 of the Sherman Act (15 U.S.C. § 1 *et seq.*) (Counts I-IV), and under Delaware law breached fiduciary duties (Counts V-VII), tortiously interfered with contractual and business interests (Count VIII), and converted their membership rights (Count IX). They sought compensatory damages, treble damages, and an injunction to stop implementation of the Plan.

ATP and the individual Board members prevailed at trial on every claim. The District Court granted judgment as a matter of law to ATP and the individual defendants on all of the state law counts, and to the individual defendants on the antitrust claims. A jury concluded that ATP was not liable for any antitrust violations. We affirmed the judgment, *Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820 (3d Cir. 2010), and the Supreme Court denied the federations' petition for certiorari, *Deutscher Tennis Bund v. ATP Tour, Inc.*, 131 S.Ct. 658 (2010).

ATP timely filed a post-trial motion, pursuant to Federal Rule of Civil Procedure 54(d), seeking attorneys' fees, costs, and expenses arising from the litigation. It cited one of its by-laws, Article 23.3, as its basis to make this claim. Article 23.3 states:

> In the event that (i) any [current or prior member or Owner or anyone on their behalf ("Claiming Party")] initiates or asserts any [claim or counterclaim ("Claim")] or joins, offers substantial assistance to or has a direct financial interest in any Claim against the League or any member or Owners (including any Claim purportedly filed on behalf of the League or any member), and (ii) the Claiming Party (or the third party that received the substantial assistance from the Claiming Party or in whose Claim the Claiming Party had a direct financial interest) does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought, then each Claiming Party shall be obligated jointly and severally to reimburse the League and

4

> any such member or Owners for all fees, costs, and expenses of every kind and description (including, but not limited to, all reasonable attorneys' fees and other litigation expenses)(collectively, "Litigation Costs") that the parties may incur in connection with such Claim.

The ATP Board unilaterally drafted and promulgated Article 23.3 at approximately the same time that it was presenting the Plan to its members. ATP asserts that the federations agreed to be bound by the by-laws when they applied for membership. The District Court, however, denied ATP's motion principally because such an award would be contrary to the underlying policy of the federal antitrust laws. The Court, relying primarily on our decision in *Byram Concretanks, Inc. v. Warren Concrete Products Co. of New Jersey*, 374 F.2d 649, 651 (3d Cir. 1967) (holding that, "in the absence of specific legislative authorization[,] attorneys' fees may not be awarded to defendants in private anti-trust litigation"), refused to give effect to Article 23.3. It reasoned that federal law preempts the enforcement of fee-shifting agreements when antitrust claims are involved. *See* Dist. Ct. Op. at 5-8. As for the state law claims, the Court reasoned that because they "all related to the anticompetitive actions alleged in the four [antitrust] claims and were both incidental to and inextricably factually intertwined with the [antitrust] claims," *id.* at 8 n.5, and because the "issues relating to the four [antitrust] claims predominated," *id.*, the fee-shifting provision in Article 23.3 is unenforceable as well with respect to the non-federal claims. ATP appeals.[2]

---

[2] We review a district court's denial of attorneys' fees for an abuse of discretion. *Krueger Associates, Inc. v. American Dist. Telegraph Co. of Pennsylvania*, 247 F.3d 61, 69 (3d Cir. 2001). "However, if the District Court denied the fees based on its

5

II.

The question we address first is one that was not raised by the parties: whether federal preemption is ripe for decision when there has been no determination of whether Article 23.3 is valid (therefore, enforceable) under state law. As no preemption issue exists here without a valid and enforceable by-law, the question answers itself. Moreover, courts "have held that federal preemption of state law is a constitutional question because it is premised on the Supremacy Clause of the United States Constitution." *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 828 (4th Cir. 2010) (citing *Bell Atl. Md., Inc. v. Prince George's Cnty.*, 212 F.3d 863, 865 (4th Cir. 2000), and *H & R Block E. Enter., Inc. v. Raskin*, 591 F.3d 718, 723-24 (4th Cir. 2010)). When there exist alternative independent state law grounds for disposing of a case, "courts should not decide the constitutional question of preemption before considering the state law grounds." *Id.*; *see also H & R Block*, 591 F.3d at 723-24 (remanding case for consideration of whether state statute applied to the plaintiff before deciding whether it was preempted). "In this context, 'an independent state law ground is one that allows us to avoid deciding a constitutional question.'" *Columbia Venture*, 604 F.3d at 828 (quoting *MediaOne Grp., Inc. v. Cnty. of Henrico*, 257 F.3d 356, 361 (4th Cir. 2001)).

Because a determination that Article 23.3 is invalid under Delaware law would allow us (and the District Court) to avoid the constitutional question of preemption, it is

conclusions on questions of law, our review is plenary." *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

an independent state law ground. Consequently, the by-law validity issue needs to be addressed, and a finding of validity must be made, before the constitutional issue of preemption can be considered.

However, as the District Court points out, "a number of other material factual issues would need to be resolved before" a determination can be made on the validity of Article 23.3 under Delaware law. Dist. Ct. Op. at 7 n.4. As an appellate court, we are not in a position to make factual findings and thus do not decide this issue. We note, though, that (like the District Court) we are aware of no case in which a Delaware court has addressed the legal validity of a by-law—adopted as an internal dispute was brewing—that requires an organization's member to pay potentially large fees to the organization if the member files suit against the organization and loses.[3]

The District Court recognized that determining whether Article 23.3 provides a basis for fee-shifting might require analysis of the possibility that it was adopted specifically to deter members from suing the organization. *See id.* We concur. We also believe that other aspects of the by-law itself, and the circumstances of its adoption, might lead Delaware courts to refuse to enforce it. [4] Indeed, we have doubts that

---

[3] In *Sternberg v. Nanticoke Memorial Hospital, Inc.*, a defendant requested attorneys' fees pursuant to an organizational by-law. C.A. No. 07C-10-011(TGH), 2009 WL 3531791, at *32 (Del. Super. Ct. Sept. 18, 2009), *aff'd in part and rev'd in part*, 15 A.3d 1225 (Del. 2011). The Superior Court, however, awarded the defendant attorneys' fees pursuant to statute and expressly declined to answer whether those fees could be awarded pursuant to the by-law. *Id.*

[4] It is interesting to note that the by-law provision here imposes fees on a plaintiff who "does not obtain a judgment *on the merits* that *substantially* achieves, in substance and amount, the *full* remedy sought." (Emphasis added.) This is not your average fee-

7

Delaware courts would conclude that Article 23.3 imposes a legally enforceable burden on Deutscher and Qatar. But this issue, as well as various underlying factual questions, must be resolved by the District Court in the first instance.[5]

Accordingly, we vacate the order of the District Court and remand the case so that it can examine, in the first instance, whether Article 23.3 of ATP's by-laws creates an enforceable obligation under state law on Deutscher and Qatar to pay ATP's attorneys' fees.[6] This panel will consider any future appeal in this matter.

---

shifting provision. Its language seems to suggest that a plaintiff would have to pay the defendant's fees even if the plaintiff receives a favorable settlement, because the plaintiff in such a case failed to "obtain a *judgment on the merits*." (Emphasis added.) Further, if a plaintiff prevailed at trial and won $10,000,000, but sought $20,000,000, this by-law theoretically could require the plaintiff to pay the defendant's fees because the judgment the plaintiff received arguably did not "*substantially* achieve[], in substance and amount, the *full* remedy sought." We presume that if Delaware treats corporate by-laws as contracts, as ATP suggests, then the same factors that lead courts not to enforce contracts—*e.g.*, unconscionability or public policy considerations—could apply to preclude enforcement of a by-law. *Cf. Lincoln Nat'l Life Ins. Co. v. Joseph Schlanger 2006 Ins. Trust*, 28 A.3d 436, 441 (Del. 2011) ("Under Delaware common law, contracts that offend public policy or harm the public are deemed *void*, as opposed to voidable.") (emphasis in original); *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978) (analyzing franchise agreement for unconscionability).

[5] The District Court's statement that "ATP cites no case in which a court held that a board-adopted corporate bylaw can form the basis for the recovery of attorney's fees from members who sue the corporation" may have indicated that it did not believe that Delaware courts would enforce this by-law against the federations. *Id*. at 5. However, it is not clear whether it was holding the by-law unenforceable as a matter of Delaware law or simply recognizing an absence of clear authority in support of ATP's position.

[6] We offer no opinion here on the merits of the parties' other legal arguments.